ZACHARIAH H. WORTHINGTON, EXC'R OF WM. WORTHINGTON, *vs.* ELEANOR OWINGS, BY HER NEXT FRIEND, J. W. OWINGS.—*December* 1850.

A testator directed his executors to sell certain real estate, and as soon as the proceeds were collected, to divide the same into eight equal parts, and "to hold one share in their hands for the separate use and maintenance of the testator's daughter and her children, or to invest the same in lands to be

settled in trust on his said daughter and her heirs forever, for the sole use and maintenance and support of her and her children, without the control of her husband, as to his executors should seem most expedient." The acting executor sold a part of the land and retained the proceeds in his hands, not being able, as he alleged, to invest it in lands. HELD: That the testator designed that the principal of the sum devised to his daughter, should not be diminished; that the interest alone should be applied to her maintenance and that of her children, and that the executor was bound to pay *interest* on the sum so retained by him.

With respect to this fund, the executor was invested with the powers and responsibilities of a trustee, and if he was unable to invest it in land, and did not choose to retain it upon condition of paying interest, it was his duty to apply to a court of equity, for an order directing a temporary investment of it, so as to make it productive.

APPEAL from the equity side of *Montgomery* county court.

The appellee filed her bill in the court below, claiming as a devisee under the will of the appellant's testator, which will directs the proceeds of certain real estate, to be sold by the executors, to be distributed among the children of the testator. (The whole of the clause relating to this controversy, will be found in the opinion of this court.) The bill alleges a sale of a portion of the lands, and report thereof to the orphans court, an audit of the same, and an order thereon to pay part thereof, $90.96, to the complainant, which it charges should have been invested on the 18th of July 1839, and another part, $387.40, which should have been invested in August, 1846. It charges that the appellant has failed to invest, and refused to pay over to the appellee, and prays an order that the money may be brought into court, to be invested under the direction thereof.

The answer alleges that respondent has always been ready and willing to pay to any one legally authorised to receive it, the share assigned by order of the orphans court to the complainant; that he has held it according to the will, for the separate use and maintenance of her three children, and offered to pay it to her trustee on receiving a bond of indemnity, which complainant declined. He could not invest it in land, because the fund was too small, and the testator designed the whole lands should be sold before a distribution, and he has used his

utmost efforts to effect a sale. The respondent offers to pay the share in his hands, but insists, " he is not liable for interest as there was no one in existence to whom he could pay them, and the funds have been unproductive in his hands."

The cause was submitted on bill and answer, and the court, (WILKINSON, A. J.,) decreed, that the appellant bring into court the sum of $387.50, with interest on 90.96⅓, from the 18th of July, 1839, and interest on $296.43⅖ from the 28th of August, 1846, from which decree the defendant appealed.

The cause was argued before SPENCE, MAGRUDER, MARTIN and FRICK, J.

By R. J. BOWIE, for the appellant, and
By KILGOUR for the appellee.

MAGRUDER, J., dissented, and delivered the following opinion:

I cannot agree with my brothers that this decree ought to be affirmed. The trustee has made no use of the money; was not authorised by the will to make the proposed investment, and was bound to retain the money, in order that he might invest it in real estate, whenever an opportunity offered. See *Gassaway and Darne vs. Cutlett*, 6 *H. & J.*, 475.

The chancellor could not authorise the trustee to lend out this money, and thus alter the will. If the will of the testator had been, that the money when received, should be invested in some safe fund, then the trustee would have been authorised to lend it out, and the chancellor, upon application, might have directed the trustee so to invest it.

The appellant is in no default, as it is not pretended he ever had an opportunity of investing the money in real estate.

The chancellor has no more power in such a case to direct the trustee to lend out the money on security, than the trustee has to do it against the chancellor's direction. This would be to alter the will.

A direction to invest money in real estate, is a direction to invest it in no other way; to retain the money until the trustee

has an opportunity of so investing it, and when such an opportunity does offer, it would be no apology for not making such an investment, that he had placed the money out of his reach, by lending it upon good security. Even the *cy. pres* principle, cannot authorise any thing of the kind.

A power to alter a man's will, ought not to be possessed by the chancellor or any other person.

But in this case, the time for the investment had not arrived. A considerable portion of the testator's land had not been sold, and this was not the fault of the trustee. Surely he could not be required to purchase land as soon as any part of the appellee's portion of the money was received by him.

MARTIN, J., delivered the opinion of this court.

This is an appeal from a decree of *Montgomery* county court as a *court of equity*, directing that the appellant bring into court upon the day specified, the sum of $387.50, with interest on $90.96½, from the 18th of July, 1839; and interest on $296.43½, from the 28th of August 1846.

We do not understand the counsel for the appellant, as objecting to so much of this order as directs the fund in question to be brought into court. That part of the decree is alone controverted as erroneous, which charges the appellant with the payment of interest on the sums enumerated; and the correctness of the opinion pronounced by the court below, in this respect, depends entirely upon the construction of the will of *William Worthington;* under which the appellee claims.

By this will the testator among other bequests and devises, directed his executors to sell his real estate in *Maryland* and *Virginia*, as therein described, and as soon the proceeds thereof should be collected, they are required, after deducting certain pecuniary legacies, to divide the same into eight equal parts, and "to hold one share in their hands for the separate use and maintenance of the testator's daughter, *Eleanor Owings*, and her children, or to invest the same in lands, to be settled in trust, for his said daughter *Eleanor*, and her heirs forever, for the sole use and maintenance and support of her and her children,

and without the control of her husband, as to his executors should seem most expedient."

This is the only provision in the will, that bears upon the question under consideration. It is apparent, we think, from the language used by the testator, that he intended, that the principal of the small sum devised to the appellee, should not be lessened or impaired, and that the profit or interest arising from this sum should alone be applied to the maintenance of his daughter, and her children; and it is equally clear, that this purpose of the testator could only be accomplished, upon the supposition, that when he gave to his executors the privilege, at their election, and in their discretion, to hold this fund in their hands, instead of investing it in land, he meant, that it should be so held by them upon the condition, that they paid interest on it.

This we regard, as the true construction of this will, and the character of the trust imposed upon the executors by its provisions. It appears that one of the persons named as executor has renounced this trust. It was however accepted by the appellant. Having accepted it, he was bound to execute it, according to its terms; and we have already declared, that this trust by its nature and terms, imposed upon the executor, who undertook to discharge it, occupying as he did the position of a trustee, the obligation to pay interest on the money devised to the appellee, and which he retained in his hands. Upon this ground, we think, the decree of the court below must be affirmed.

The view we have thus taken, of the obligation imposed by the nature of this trust upon the executor, is not, we think, to be resisted by the argument, that it appears from the answer, that the fund was in fact unproductive; that the appellant was unable to invest it in land, and that he had no right to use it; and that it is unjust and unreasonable to charge him with interest on money, which he had no power to employ.

An argument of this kind would proceed, we think, upon a misconception of the will. It certainly would be a very harsh and unreasonable rule, the operation of which was to subject a

party to the payment of interest, on money which he had no right to use. When, however, the testator declared that this money might be retained in the hands of his executors, if they preferred this course to an investment of it in land, we do not understand him to have intended, that the money should remain in their hands, a barren and unproductive fund. Such an idea is inconsistent with the intention of the testator, to apply the income or interest produced by the fund, to the support of his daughter, and her children. What the testator meant, was, that his executors should have the control of the fund, with the right to use it. For certainly, as soon as it is determined, that the party who holds the money is chargeable with interest on it, it follows as a consequence, that he has a right to employ it; the obligation to pay interest on the fund, necessarily involving the right so to use and employ it, as to make it productive.

With respect to this fund, the appellant was invested with the powers and responsibilities of a trustee. Devoted as the *interest* of the fund was by the testator to the maintenance of his daughter, and her children, it could only answer the purpose for which it was created, by being made productive. And if the appellant was unable to invest this money in land, and did not choose to retain it in his hands upon the condition of paying interest on it, it was his duty by an appropriate proceeding to have obtained from the court of chancery, or from *Montgomery* county court, as a court of equity, an order for its investment. The court of chancery could have no difficulty in directing a temporary investment of this fund, so as to make it productive, and in this way contribute to the support of the beneficiaries, until an opportunity occurred for investing it in land.

DECREE AFFIRMED, WITH COSTS.